UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CARLOS A. ORTEGA,

　　　　　Plaintiff,

　　v.

A. FLORES, et al.,

　　　　　Defendants.

Case No. 19-cv-00319-HSG

**ORDER DENYING AS MOOT PLAINTIFF'S REQUEST FOR EXTENSION OF TIME TO FILE SURREPLY; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 60, 68

Plaintiff, an insanity acquittee at Napa State Hospital, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  For the reasons set forth below, the Court DENIES as moot Plaintiff's request for an extension of time to file a surreply, Dkt. No. 68; and GRANTS Defendants' motion for summary judgment, Dkt. No. 60.

**DISCUSSION**

**I.　　Procedural Background**

On January 18, 2019, Plaintiff commenced this case.  Dkt. No. 1.  The Court found that the complaint stated a cognizable claim for excessive force, in violation of either the Eighth Amendment or the Fourteenth Amendment, against Santa Clara County Jail officers A. Flores, J. Dias, Malek, and Dugamis.[1]  Dkt. No. 7.  On November 27, 2019, the Court granted Defendants' motion to dismiss the case as time-barred, finding *inter alia* that Plaintiff's commitment to Napa State Hospital and the finding that he was not guilty by reason of insanity in an unrelated state

---

[1] Defendant Dugamis was not served because Plaintiff did not provide sufficient information to locate him.  *See* Dkt. No. 20; Dkt. No. 24 at 6 n.2 (Defendants state that in December 2012, Santa Clara County did not employ any deputy named Dugamis, or any deputy with a similar name).

United States District Court
Northern District of California

1    criminal proceeding did not entitle him to either statutory or equitable tolling.  *See generally* Dkt.

2    No. 31.  The Court entered judgment in favor of Defendants that same day.  Dkt. No. 32.   Plaintiff

3    appealed. Dkt. No. 33.

4            On December 9, 2021, the Ninth Circuit found that this Court erred in dismissing this case

5    as time-barred, finding that the Court incorrectly applied Fed. R. Civ. P. 12(b)(6) in dismissing the

6    complaint as time-barred:

> Ortega may be able to establish entitlement to tolling. Under California law, [FN 1] Ortega may be entitled to statutory tolling if he lacked "the legal capacity to make decisions" when his cause of action accrued, Cal. Civ. Proc. Code § 352(a), or to equitable tolling, if he demonstrates "excusable delay," *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). [FN 2]

> FN 1: Federal courts apply the forum state's tolling laws to 42 U.S.C. § 1983 cases. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

> FN 2: California applies a stop-clock approach to equitable tolling: "the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded." *Lantzy v. Centex Homes*, 73 P.3d 517, 523 (Cal. 2003), *as modified* (Aug. 27, 2003) (emphasis in original).

> The district court found that Ortega was not entitled to statutory tolling because he did not "present[] evidence supporting his allegation" that he lacked the legal capacity to make decisions in any of his filings. The district court found that Ortega was not entitled to equitable tolling because he did not "demonstrate[] the necessary reasonable and good faith conduct required," as he was able to litigate other lawsuits during the time period at issue. [FN 3]  This is the incorrect Rule 12(b)(6) standard; Ortega need not "demonstrate" or "present evidence" at this stage. Rather, he must make factual allegations that show a plausible claim for relief, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and do not foreclose the possibility that he may establish statutory or equitable tolling, *Supermail Cargo*, 68 F.3d at 1206–07. The face of his complaint does not foreclose the possibility that Ortega may be able to demonstrate that he lacked the legal capacity to make decisions during the relevant time period or that he excusably delayed filing his suit.

> FN 3: The district court properly took judicial notice of the list of Ortega's other cases. Fed. R. Evid. 201(b); *see Est. of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) (taking judicial notice of court filings in a related case to affirm the district court's decision to dismiss the plaintiff's complaint as untimely and deny the plaintiff equitable tolling). Moreover, these materials, even if considered, do not prove that Ortega's complaint is untimely. While Ortega's litigation history might suggest that he had the capacity to litigate, there could be factual questions about whether Ortega was actually competent. For example, counsel or another prisoner could have helped him file lawsuits. And, even if Ortega was competent enough to file certain lawsuits on his own, it is possible that Ortega was only competent during brief windows of time—windows that add up to much less than two years.

Dkt. No. 45 at 2-4.  The Ninth Circuit reversed and remanded for further proceedings.  *Id.*

1    Following the remand, the Clerk reopened this case on January 3, 2022.  Dkt. No. 46.  The Court

2    ordered the parties to brief the threshold issue of whether Plaintiff's action is time-barred.  Dkt.

3    No. 47.

4            Defendants filed the summary judgment motion that is now pending before the Court,

5    arguing that this case is untimely and that Plaintiff is not entitled to statutory tolling or equitable

6    tolling.  Dkt. No. 60.  Defendants also filed a request for judicial notice.  Dkt. No. 60-2.  Plaintiff

7    has filed an opposition, Dkt. No. 64, and a request for judicial notice, Dkt. No. 65.  Defendants

8    have filed a reply.  Dkt. No. 67.  Without leave of court, Plaintiff filed a surreply.  Dkt. No. 69.

9    **II.      Factual Background[2]**

10          **A.      December 12, 2012 Event**

11          The complaint makes the following allegations.  On December 12, 2012, Plaintiff was

12   kneeling to be handcuffed so that he could make a *pro per* legal phone call.  Per procedure, he had

13   his hands in the outside tray.  While Plaintiff was handcuffed and his hands were in the outside

14   tray, defendants Santa Clara County Jail officers Flores, Dias, and Malek used excessive force by

15   yanking on his wrists, and pepper-spraying, hitting, and cutting him.  Dkt. No. 1.

16          Jail records from that day describe Plaintiff as presenting as clear and coherent, state that

17   Plaintiff's medications were "reportedly" effective in controlling his schizoaffective diagnosis,

18   that Plaintiff self-reported that the voices were not telling him to hurt anyone, and that Plaintiff

19   recognized the jail official taking the notes from several years ago.  Dkt. No. 1 at 9.

20          **B.      Relevant California Laws Regarding Sanity**

21          The terms "sanity" and "insanity" are defined differently in the various California statutes.

22          *Pleading Not Guilty by Reason of Insanity*.  Under California law, if a defendant pleads not

23   guilty and joins that plea with a plea of not guilty by reason of insanity, the issues of guilt and

24   sanity are tried separately.  *People v. Hernandez*, 22 Cal.4th 512, 520 (Cal. 2000).  During the

25   guilt phase of the trial, the defendant is presumed to have been sane at the time the offense is

26   alleged to have been committed.  Cal. Penal Code § 1026(a).  If the jury finds the defendant guilty,

27

28   _____
     [2] The following facts are undisputed unless otherwise indicated.

United States District Court
Northern District of California

or if the defendant has only pled not guilty by reason of insanity, then the issue of sanity is tried. The question during the sanity portion of the trial is whether the defendant was sane or insane at the time the offense was committed. *Id.* Under California law, a defendant is insane at the time the offense was committed if the defendant was incapable of knowing or understanding the nature and quality of his act and incapable of distinguishing right from wrong. Cal. Penal Code § 25(b); *see also Hernandez*, 22 Cal. 4th at 520.

*Commitment to California Department of State Hospitals and Whether Sanity Has Been Fully Recovered.* If the defendant is found to be insane at the time the offense was committed, the defendant's placement after the trial depends on whether the defendant has fully recovered his sanity. Cal. Penal Code § 1026(a). A defendant's sanity is considered recovered if he would not be a danger to the health and safety of others, due to mental defect, disease, or disorder. Cal. Penal Code § 1026.2(e). If it appears to the court that the sanity of the defendant has been fully recovered, the defendant is remanded to the custody of the sheriff. Cal. Penal Code § 1026(b). If it appears to the court that the sanity of the defendant has not yet been recovered, the court directs that the defendant either be committed to the California Department of State Hospitals or placed on outpatient status. Cal. Penal Code § 1026(b).

**C.      Plaintiff's Relevant Mental Health History**

Plaintiff's medical records indicate psychotic symptoms dating back to at least 2007. Dkt. No. 64-1 at 40, 45. Plaintiff has been diagnosed with bipolar disorder, schizophrenia, and psychotic disorder at various times in his life, including during the relevant time period. Dkt. No. 64-1 at 42, 45; Dkt. No. 64-3 at 74

With respect to Plaintiff's mental history during the relevant time period, December 12, 2012 (when the assault alleged in this case occurred) to January 18, 2019 (when this action was filed), the record shows the following.

On September 24, 2013, Plaintiff was committed to the California Department of Mental Health ("CDMH") by Santa Clara County. On February 6, 2014, Plaintiff was admitted to Napa State Hospital pursuant to a "not guilty by reason of insanity" finding ("NGI finding") for four offenses stemming from incidents that occurred on May 7, 2007 and September 4, 2007. Dkt. No.

4

64-1 at 55; Dkt. No. 64-3 at 74, 76.  Plaintiff is not under civil conservatorship.  *Id.* at 74.  On June 12, 2018, the Santa Clara Superior Court denied Plaintiff's petition for a finding that he be considered restored to sanity, finding Plaintiff had not established that he would not be a danger to the safety of others.  Dkt. No. 64-3 at 67-69.

> **D.      Grievance and Litigation History from December 12, 2012 to January 18, 2019**

According to the complaint, Plaintiff pursued the following administrative remedies for his claim regarding the alleged December 12, 2012 assault that is raised in this action.

Plaintiff promptly filed a complaint with Internal Affairs after the alleged assault.  On December 14, 2013, Plaintiff was interviewed in connection with this complaint.  On January 4, 2013, Plaintiff wrote a three-page letter to jail officials informing them that on December 13, 2012, officers Flores, Melek and Daiz[3] subjected him to excessive force when they treated him aggressively while he was handcuffed.  Dkt. No. 1 at 11-13.  In this letter, Plaintiff specified that the letter was intended to exhaust his administrative remedies.  Dkt. No. 1 at 11.  On May 1, 2013, Plaintiff was informed that Internal Affairs had concluded its investigation.  Dkt. No. 1 at 11-15, 19.

In the six months prior to the alleged assault, Plaintiff was litigating three cases in this district: (1) C No. 09-cv-05527 SBA, *Ortega v. City of Santa Clara* ("*Santa Clara*"); (2) C No. 11-cv-01003 SBA, *Ortega v. Smith, et al.* ("*Smith*"); and (3) C No. 12-cv-3426 KAW, *Ortega v. Flavetta, et al.* ("*Flavetta*"); and he filed eleven *pro se* filings during this time period.  The *pro se* pleadings included affidavits in support of his complaint, responses to answers, discovery motions, requests for default judgment, administrative motions, and motions seeking miscellaneous relief, such as attorneys' fees or appointment of counsel.  *See Santa Clara*, *Smith*, *Flavetta.*  In this action, Plaintiff has not reported receiving any assistance, i.e., help from other inmates or from counsel, in preparing these *pro se* pleadings.

Between December 12, 2012, the date of the alleged assault, and January 18, 2019, the date that Plaintiff filed this case, Plaintiff filed and/or was litigating seven cases in this district,  the

---

[3] In this letter, Plaintiff appears to have misspelled defendant Diaz's name as Daiz and incorrectly reported the relevant date as December 13, 2012 (instead of December 12, 2012).

United States District Court
Northern District of California

three cases listed *supra* and the following additional cases: (4) C No. 13-cv-06016 JSC, *Ortega v. Mattocks, et al.*; (5) C No. 14-cv-03783 HSG, *Ortega v. Barbasa, et al.*; (6) C No. 15-cv-04876 HSG, *Ortega v. Ritchie*; and (7) C No. 17-cv-03339, *Ortega v. Corso*.  During this six-year time period, Plaintiff filed approximately 150 *pro se*[4] pleadings in these seven cases.  *See* C No. 09-cv-05527 SBA, *Ortega v. City of Santa Clara*; C No. 11-cv-01003 SBA, *Ortega v. Smith, et al.*; C No. 12-cv-3426 KAW, *Ortega v. Flavetta, et al.*; C No. 13-cv-06016 JSC, *Ortega v. Mattocks, et al.*; C No. 14-cv-03783 HSG, *Ortega v. Barbasa, et al.*; C No. 15-cv-04876 HSG, *Ortega v. Ritchie*; and C No. 17-cv-03339, *Ortega v. Corso*.  In 2013, Plaintiff filed at least 50 *pro se* filings.  *See id.*  In 2014, 2015 and 2016, Plaintiff filed an average of 18 to 20 *pro se* filings each year.  *See id.*  In 2017, Plaintiff filed approximately 11 *pro se* filings.  *See id.*  In 2018, Plaintiff filed approximately 18 *pro se* filings.  *See id.*  The *pro se* pleadings included complaints, exhibits, administrative motions, dispositive motions, and motions seeking miscellaneous relief, such as attorneys' fees or *pro per* status.  *See id.*  Plaintiff also represented himself at the first set of settlement proceedings in C No. 14-cv-03783 HSG, *Ortega v. Barbasa, et al.*  In this action, Plaintiff has not reported receiving any assistance, i.e., help from other inmates or from counsel, in preparing these *pro se* pleadings.

### III.  Requests for Judicial Notice

#### A.  Defendants' Request for Judicial Notice

Defendants ask the Court to take judicial notice of the following dockets of certain court cases filed by Plaintiff in this district and take judicial notice of certain pleadings filed in these cases:

EXHIBIT A: *Ortega v. Santa Clara County Jail, et al.*, U.S.D.C. Northern District of California, Case No. 09-cv-05527-SBA, Dkt. No. 73, Notice of Motion and Plaintiff's Opposition to Defendants' Summary Judgment dated March 20, 2013;

EXHIBIT B: *Ortega v. Santa Clara County Jail, et al.*, U.S.D.C. Northern District of

---

[4] Plaintiff was represented by counsel in C No. 14-cv-03783 HSG, *Ortega v. Barbasa, et al.* (N.D Cal.), from April 2016 to April 2017.  The Court has not included the pleadings filed by counsel in its count of the *pro se* pleadings filed during the relevant time period.

United States District Court
Northern District of California

1   California, Case No. 09-cv-05527-SBA, Pacer Docket Report;

2     EXHIBIT C: *Ortega v. Santa Clara County Jail, et al.*, U.S.D.C. Northern District of

3   California, Case No. 09-cv-05527-SBA, Dkt. No. 118, Court's Order Denying Plaintiff's Motion

4   to Set Aside Judgment or Order;

5     EXHIBIT D: *Ortega v. Barbasa, Villa-Gomez, et al.*, U.S.D.C. Northern District of

6   California, Case No.11-cv-01003-SBA, Dkt. No. 53, Notice of Appeal;

7     EXHIBIT E: *Ortega v. Mattocks, et al.*, U.S.D.C. Northern District of California, Case No.

8   13-cv-06016-JSC, Dkt. No. 1, Complaint Under the Civil Rights Act;

9     EXHIBIT F: *Ortega v. Mattocks, et al.*, U.S.D.C. Northern District of California, Case No.

10   13-cv-06016-JSC, Dkt. No. 27, Order Denying Motion to Dismiss;

11     EXHIBIT G: *Ortega v. Barbasa, et al.*, U.S.D.C. Northern District of California, Case No.

12   14-cv-03783-HSG, Dkt. No. 1, Complaint under the Civil Rights Act;

13     EXHIBIT H: *Ortega v. Barbasa, et al.*, U.S.D.C. Northern District of California, Case No.

14   14-cv-03783-HSG, Dkt. No. 10, Order of Partial Dismissal and of Service;

15     EXHIBIT I: *Ortega v. Barbasa, et al*., U.S.D.C. Northern District of California, Case No.

16   14-cv-03783-HSG, Dkt. No. 45, Order Granting in Part and Denying in Part Defendants' Motion

17   for Summary Judgment;

18     EXHIBIT J: *Ortega v. Ritchie, et al.*, U.S.D.C. Northern District of California, Case No.

19   15-cv-04876-HSG, Dkt. No. 11, Order of Service, Granting Leave to Proceed In Forma Pauperis;

20     EXHIBIT K: *Ortega v. Ritchie, et al.*, U.S.D.C. Northern District of California, Case No.

21   15-cv-04876-HSG, Dkt. No. 50, Notice of Appeal;

22     EXHIBIT L: *Ortega v. Santa Clara County Department of Corrections, et al.*, U.S.D.C.

23   Northern District of California, Case No. 17-cv-03339-HSG, Dkt. No. 1, Complaint under the

24   Civil Rights Act;

25     EXHIBIT M: *Ortega v. Santa Clara County Department of Corrections, et al*., U.S.D.C.

26   Northern District of California, Case No. 17-cv-03339-HSG, Dkt. No. 7, Order of Dismissal with

27   Leave to Amend;

28     EXHIBIT N: *Ortega v. Santa Clara County Department of Corrections, et al.*, U.S.D.C.

1   Northern District of California, Case No. 17-cv-03339-HSG, Dkt. No. 13, Third Order of

2   Dismissal with Leave to Amend;

3        EXHIBIT O: *Ortega v. Santa Clara County Department of Corrections, et al*., U.S.D.C.

4   Northern District of California, Case No. 17-cv-03339-HSG, Dkt. No. 21, Order of Dismissal;

5        EXHIBIT P: *Ortega v. Santa Clara County Jail, et al*., U.S.D.C. Northern District of

6   California, Case No. 09-cv-05527-SBA, Pacer Docket Report;

7        EXHIBIT Q: *Ortega v. Barbasa, Villa-Gomez, et al*., U.S.D.C. Northern District of

8   California, Case No.11-cv-01003-SBA, Pacer Docket Report;

9        EXHIBIT R: *Ortega v. Mattocks, et al*., U.S.D.C. Northern District of California, Case No.

10   13-cv-06016-JSC, Pacer Docket Report;

11        EXHIBIT S: *Ortega v. Barbasa, et al*., U.S.D.C. Northern District of California, Case No.

12   14-cv-03783-HSG, Pacer Docket Report;

13        EXHIBIT T: *Ortega v. Flavetta, et al.,* U.S.D.C. Northern District of California, Case No.

14   12-cv-03426-KAW, Pacer Docket Report; and

15        EXHIBIT U: *Pamer v. California Department of Corrections*, U.S.D.C. Northern District

16   of California, Case No. 04-cv-03252-SI, Dkt. No. 69, Order Granting Summary Judgment

17   Motions.

18        The Court GRANTS Defendants' request for judicial notice of Exhibits A-U because these

19   documents are pleadings filed in a court and have a direct relation to the matters at issue, and

20   because these pleadings or documents can be accurately and readily determined from sources

21   whose accuracy cannot reasonably be questioned.  *See U.S. ex rel. Robinson Rancheria Citizens*

22   *Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (federal courts may "take notice of

23   proceedings in other courts, both within and without the federal judicial system, if those

24   proceedings have a direct relation to the matters at issue.") (internal quotation marks and citation

25   omitted); Fed. R. Evid. 201(b).  The Court takes judicial notice of the existence of the dockets in

26   these court cases and the existence of these pleadings, but not the truth of the contents of the

27   dockets or the pleadings.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001)

28   ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's

United States District Court
Northern District of California

opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (citing to *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3rd Cir. 1999)).

### B.    Plaintiff's Request for Judicial Notice

Plaintiff asks the Court to take judicial notice of exhibits filed in support of his opposition to Defendants' summary judgment motion pursuant to Fed. R. Evid. 201, 401(a).  The exhibits consist of two psychological evaluations; a December 12, 2012 jail mental health "Crisis SOAP note;" letters written by Plaintiff in 2013 to jail officials; inmate grievances filed in 2013 by Plaintiff regarding the December 12, 2012 event; a June 7, 2007 letter from Plaintiff's public defender to Dr. Echeandia requesting a Cal. Evid. Code § 1017 evaluation of Plaintiff; a February 23, 2017 letter from Plaintiff's attorney in C No. 14-cv-03783 HSG, *Ortega v. Barbasa, et al.*, conveying the settlement agreement in that case; the reporter's transcript for the proceedings held on September 24, 2023 in Santa Clara Superior Court Case Nos. CC761487, CC768652; the Ninth Circuit's December 9, 2021 order in this case; mental health action and treatment plans from 2018, 2019, and 2022; a July 2020 request from Plaintiff for his medical records and the jail response; various Santa Clara County Jail reports related to the December 12, 2012 event; and the reporter's transcript for the June 12, 2018 proceedings regarding Plaintiff's request to be deemed restored to sanity.

Plaintiff misunderstands the nature and purpose of judicial notice under Fed. R. Evid. 201. Fed. R. Evid. 201 is intended to obviate the need for formal fact-finding as to certain facts that are undisputed and easily verified.  Fed. R. Evid. 201; *see, e.g., Melong v. Micronesian Claims Comm.*, 643 F.2d 10, 12 n.5 (D.C. Cir. 1980) (judicial notice under Rule 201 is designed for judicial recognition of scientific or historical fact without resort to cumbersome methods of proof). Fed. R. Evid. 201(b) allows the court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  While matters of public record are proper subjects of judicial

1   notice, a court may take notice only of the existence and authenticity of an item, not the truth of its

2   contents. *See Lee*, 250 F.3d at 689–90.  In particular, the court may not take judicial notice of any

3   disputed matter. *Id.*  To the extent that Plaintiff is requesting that the Court consider these exhibits

4   when deciding the summary judgment motion, the Court has done so.  However, Fed. R. Evid. 201

5   does not allow the Court to presume that any statements made in these exhibits are true for the

6   purpose of resolving factual disputes at summary judgment.

7         Nor does Fed. R. Evid. 401(a) allow the Court to take judicial notice of these exhibits.

8   Fed. R. Evid. 401(a) defines what constitutes relevant evidence for the purpose of admissibility at

9   trial.  The relevancy of a piece of evidence is unrelated to whether the Court may take judicial

10  notice of the evidence.

11        Accordingly, the Court DENIES Plaintiff's request for judicial notice.  However, the Court

12  has considered these exhibits in deciding the summary judgment motion.

13  **IV.    Denying Request for Leave to File Surreply**

14        After Defendants' summary judgment motion was fully briefed, Plaintiff filed a request for

15  an extension of time to file a surreply, on the grounds that Defendants had been sending their

16  pleadings to the wrong address, thereby reducing Plaintiff's time to prepare his responsive

17  pleadings.  Dkt. No. 68.  N.D. Cal. L.R. 7-3(d) provides that once a reply is filed, no additional

18  memoranda, papers or letters may be filed without prior Court approval, except if new evidence

19  has been submitted in the reply or a relevant judicial opinion was published after the date the

20  opposition or reply was filed by filing.  N.D. Cal. L.R. 7-3(d).  Accordingly, the Court construes

21  this request as a request for leave to file a surreply.  Plaintiff's request for leave to file a surreply is

22  DENIED.  Dkt. No. 68.  Defendants' reply brief in support of their summary judgment motion did

23  not submit new evidence, and Plaintiff's surreply did not reference a newly published relevant

24  judicial opinion.  *See* Dkt. Nos. 67, 69.

25  **V.     Summary Judgment Motion**

26        **A.     Legal Standard**

27        Summary judgment is proper where the pleadings, discovery and affidavits show there is

28  "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

United States District Court
Northern District of California

10

law." *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  If the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

## B.   Statute of Limitations

42 U.S.C. § 1983 does not contain its own limitations period.  42 U.S.C. § 1983 actions are characterized as personal injury actions for statute of limitations purposes.  *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995).  "Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citing *Wilson v. Garcia*,

471 U.S. 261, 276–79 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78 (2004)); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at Cal. Civ. Proc. Code § 335.1.  *See* Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).  The applicable statute of limitations for 42 U.S.C. § 1983 actions brought in California is therefore two years.  *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (applying California's prior one-year statute of limitations to Section 1983 action).

While state law provides the statute of limitations, it is federal law that determines when a cause of action accrues and when the statute of limitations begins to run.  *Wallace*, 549 U.S. at 388; *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).  Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *See TwoRivers*, 174 F.3d at 991–92 (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)).  But accrual ultimately depends on the substantive basis of the claim.  *See, e.g.*, *Bradford v. Scherschligt*, 803 F.3d 382, 387–89 (9th Cir. 2015) (claim for deliberate fabrication of evidence accrues when charges are fully and finally resolved and can no longer be brought against defendant, which there meant following acquittal at retrial).

A federal court must also give effect to a state's tolling provisions when applicable.  *See Hardin v. Straub*, 490 U.S. 536, 538, 544 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419–20 (9th Cir. 1986).  In relevant part, California law provides for statutory tolling for the time during which a plaintiff lacks the legal capacity to make decisions.  *See* Cal. Code Civ. Proc. § 352(a).[5]  Cal. Code Civ. Proc. § 352(a) provides that if the plaintiff lacks the legal capacity to make decisions at

_____

[5] California law also provides for statutory tolling for the disability of imprisonment, if the plaintiff is imprisoned on a criminal charge for a term less than life at the time the cause of action accrued, Cal. Civ. Proc. § 352.1(a), and for statutory tolling when an inmate seeks to bring an action related to conduct for which he was criminally charged, Cal. Gov't Code § 945.3.  Plaintiff does not argue that he is entitled to tolling under either of these sections and the record indicates that he is not.  Cal. Civ. Proc. § 352.1(a) is inapplicable here because Plaintiff is an insanity acquittee, and not imprisoned pursuant to a criminal charge.  Cal. Gov't Code § 945.3 is inapplicable here because Plaintiff was not criminally prosecuted for the December 2012 incident.  Dkt. No. 60-1 at 1-3 ("Severian Decl.") at ¶¶ 12-13.

the time the cause of action accrued, the time during which the plaintiff lacks legal capacity is excluded in determining when he is required to file the case.  *See* Cal. Civ. Proc. Code § 352(a). The statute of limitations begins to run immediately after the recognized disability period ends. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 378–89 (9th Cir. 1998) (applying California law).

A plaintiff is entitled to Cal. Code Civ. Proc. § 352(a) tolling for lack of legal capacity if he or she is "incapable of caring for his or her property or transacting business or understanding the nature or effects of his or her acts." *Alcott Rehab. Hosp. v. Super. Ct*., 93 Cal. App. 4th 94, 101 (2001) (citing *Pearl v. Pearl*, 177 Cal. 303, 307 (1918)).  Commitment to a state hospital raises a "rebuttable presumption" of lack of legal capacity but is not conclusive evidence that the person lacks legal capacity.  *Hsu v. Mt. Zion Hosp.*, 259 Cal. App. 2d 562, 572 (Cal. Ct. App. 1968).  The *Hsu* court explained the rationale for the rebuttable presumption as follows:

> The rationale underlying the cases that hold that an adjudication of mental illness arising out of a commitment proceeding is not conclusive evidence of insanity is that the purpose of such a proceeding is not to determine whether such a person is incapable of caring for his property or transacting business or understanding the nature or effects of his acts, but rather to determine whether the person is in fact in such a mental condition as to justify the state in depriving him of his personal liberty and affording him, if it is found needed, the benefit of proper care and remedial aid.

*Hsu*, 259 Cal. App. 2d at 572.  The "basic question" is whether the individual is "sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action." *Id.* at 575.  Under Cal. Civ. Proc. Code § 352(a), even "a person who is adjudged mentally ill [for commitment purposes] may nevertheless be capable of transacting business and carrying out his affairs, either during occasional lucid intervals or throughout his hospitalization." *See Hsu*, 66 Cal. Rptr. at 665.

Incapacity must exist at the time the claims accrue and tolling lasts only until the plaintiff regains capacity.  Cal. Civ. Proc. Code § 352(a); *Larsson v. Cedars of Lebanon Hosp.*, 97 Cal. App. 2d 704, 707 (Cal. Ct. App. 1950).  Under California law, once the cause of action accrues and the statute begins to run, no later disability suspends it.  *Larsson.*, 97 Cal. App. 2d at 707; *see also Singer ex rel. Singer v. Paul Revere Life Ins. Co.*, No. CV 14-08700 MMM MRWX, 2015 WL 3970284, at *4 (C.D. Cal. June 30, 2015); *Calloway v. Scribner*, C No. 1:11-cv-00803 DLB

United States District Court
Northern District of California

1    PC, 2014 WL 6819872, at *3 (E.D. Cal. Dec. 2, 2014) ("a mental incompetency that arises after a

2    cause of action has accrued does not toll the statute of limitations") (citing to *Larsson*, 97 Cal.

3    App. 2d at 707); *Jones v. Jacobs*, No. C 11-1340 SI PR, 2011 WL 5320983, at *2 (N.D. Cal. Nov.

4    2, 2011) (same); *Mocak v. Hunt*, No. C–01–1317 PJH, 2002 WL 485049, *2 n. 2 (N.D. Cal. Mar.

5    27, 2002) ("Incompetency that arises after the accrual of a cause of action does not suspend the

6    running of the statute of limitations") (applying California law).

7           California courts also apply equitable tolling to extend the limitations period.  *Lukovsky v.*

8    *San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  "Equitable tolling is a judge-made doctrine

9    which operates independently of the literal wording of the Code of Civil Procedure to suspend or

10   extend a statute of limitations as necessary to ensure fundamental practicality and fairness."

11   *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (Cal. 2003) (internal citation and quotation marks

12   omitted).  Application of California's equitable tolling doctrine "requires a balancing of the

13   injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important

14   public interest or policy expressed by the . . . limitations statute." *Id.* at 371 (alteration in original,

15   internal citation and quotation marks omitted).  Equitable tolling is sparingly applied, *Addison v.*

16   *Calif.*, 21 Cal.3d 313, 316 (Cal. 1978), and is "designed to prevent unjust and technical forfeitures

17   of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to

18   the defendant of the plaintiff's claims—has been satisfied," *McDonald v. Antelope Valley Cmty.*

19   *Coll. Dist.*, 45 Cal.4th 88, 99 (Cal. 2008) (internal quotation marks and citation omitted).

20          Under California's test for equitable tolling, a plaintiff must establish "'timely notice, and

21   lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the

22   plaintiff.'"  *McDonald*, 45 Cal.4th at 102 (quoting *Addison*, 21 Cal.3d at 319).  "[T]he effect of

23   equitable tolling is that the limitations period *stops running* during the tolling event, and begins to

24   run again only when the tolling event has concluded." *Lantzy*, 31 Cal. 4th at 370 (emphasis in

25   original).

26          **C.      Analysis**

27          Defendants move for summary judgment on the grounds that this case is untimely because

28   Plaintiff filed it nearly six years after the incident, and therefore nearly four years after the statute

United States District Court
Northern District of California

1    of limitations expired.  Defendants argue that Plaintiff is not entitled to statutory tolling pursuant

2    to Cal. Civ. Proc. Code § 352(a) because the record indicates that Plaintiff did not lack legal

3    capacity at the time of the alleged use of excessive force.  Defendants also argue that Plaintiff is

4    not entitled to equitable tolling because Plaintiff's delay was not excusable, reasonable, or in good

5    faith because Plaintiff was aware of the facts needed to file this action and was actively pursuing

6    other litigation during the relevant time period, and because Defendants are prejudiced by the

7    delay because witnesses' memories have faded.  *See generally* Dkt. Nos. 60, 67.

8            Plaintiff argues that he is entitled to tolling pursuant to Cal. Civ. Proc. Code § 352(a) for

9    the following reasons.[6]  Plaintiff is an insanity acquittee and is housed at Napa State Hospital

10   pursuant to a psychiatric detention.  On December 5, 2012, a doctor determined that Plaintiff met

11   the legal criteria for insanity on May 7, 2007 and September 4, 2007.  On September 24, 2013,

12   Plaintiff was determined to be legally insane and incompetent during some periods from May 4,

13   2007 to April 4, 2019.[7]  From 2007 to 2019, Plaintiff's fixed false beliefs were more severe.  From

14   March 2007 to February 6, 2014, Plaintiff was treated with daily medication but remained

15   unstable.  From February 6, 2014 to 2018, Plaintiff's treatment consisted of daily medications,

16   treatment groups, job training, and Wellness Recovery Action Plan.  Plaintiff's 2018 treatment

17   plans stated that Plaintiff required more treatment; that he continued to have difficulty

18   distinguishing between triggers, early warning signs, and symptoms; that he focused on lawsuits

19   instead of treatment which led to a demotion in his housing placement; and that he continued to

20   believe that the 1997 incident was possibly caused by witchcraft.  As of April 4, 2019 to present,

21   Plaintiff no longer holds fixed false beliefs.  Plaintiff's doctor and treatment team have opined that

22   Plaintiff's commitment at Napa State Hospital should continue because Plaintiff requires further

23   treatment.  Plaintiff argues that the determination that he is insane is proof that he lacks the mental

24

25   ────────────────
     [6] Plaintiff's opposition and surreply also argue that he is entitled to summary judgment on the

26   merits of his excessive force claim.  The Court has only ordered briefing on whether this case is
     time-barred because this is a threshold issue that may dispose of the case.  Because the Court finds

27   that this case is time-barred, it declines to address the parties' arguments and evidence regarding
     the merits of Plaintiff's excessive force claim.

28   [7] It is unclear if Plaintiff made a typographical error in stating that a legal determination was made
     in 2013 regarding his sanity and competency through 2019.

capacity to understand the nature or effects of transactions.  Plaintiff further argues that his ability to file lawsuits is irrelevant because he was deemed insane pursuant to Cal. Penal Code § 1026 and has not yet been restored to sanity, and because he was deemed incompetent pursuant to Cal. Penal Code § 1370 and the court has not yet deemed him competent.  In support of his arguments, Plaintiff cites to *May v. Enomoto*, 633 F.2d 164 (9th Cir. 1980), and *Gottesman v. Simon*, 169 Cal.App.2d 494 (Cal. Ct. App. 1959), as well as the following medical and court records:

- a June 7, 2007 letter from his deputy public defender Sonia M. Smith to Dr. David Echeandia, requesting a Cal. Evid. Code § 1017 evaluation to determine Plaintiff's competency to stand trial pursuant to Cal. Penal Code § 1386, and a determination as to whether Plaintiff had a mental disease or defect that could constitute legal insanity or otherwise affect his ability to form the requisite intent;

- an August 15, 2007 evaluation by Dr. John M. Greene, regarding his competency to stand trial, pursuant to Cal. Penal Code § 1386;

- a December 15, 2012 evaluation by Dr. Jeffrey Schreiber Kline, regarding whether he was legally insane pursuant to Cal. Penal Code § 25(b) on September 4, 2007;

- an August 19, 2013 letter from Harper Medical Group, Inc. community program director Douglas Johnson recommending Plaintiff's commitment to the Department of State Hospitals;

- the reporter's transcript from the September 24, 2013 proceeding committing Plaintiff to the Department of State Hospitals;

- the reporter's transcript from the June 12, 2018 hearing on Plaintiff's petition for restoration of sanity;

- Plaintiff's treatment plans dated July 16, 2018, October 9, 2018, April 4, 2019, and April 13, 2022; and

- an April 17, 2022 Wellness Recovery Action Plan.

*See generally* Dkt. No. 64 at 16-24; Dkt. Nos. 64-1, 64-2, 64-3; Dkt. No. 69 at 1-3.

Plaintiff does not dispute that this claim accrued on December 12, 2012, when the injury occurred.  Under Cal. Civ. Proc. Code § 335.1, the statute of limitations ended two years later, on December 11, 2014.  This case, filed on January 18, 2019, is therefore untimely by over four years unless Plaintiff is entitled to either statutory or equitable tolling of the limitations period.  For the reasons set forth below, the Court finds that there is no triable issue of fact as to whether Plaintiff is entitled to statutory or equitable tolling of the limitations period.

//

16

**1.        Statutory Tolling Pursuant to Cal. Civ. Proc. Code § 352(a)**

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not established a triable issue of material fact as to entitlement to tolling of the limitations period pursuant to Cal. Civ. Proc. Code § 352(a).  Plaintiff argues that he lacked legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a) because he was found to be insane under Cal. Penal Code § 25(b) and because he has not yet been deemed restored to sanity under Cal. Penal Code §§ 1026(b), 1026.2(e).  However, "insanity," as defined in Cal. Penal Code § 25(b), Cal. Penal Code §§ 1026(b), 1026.2(e), is distinct from what constitutes lack of legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a).  Each of these statutes defines insanity differently for different purposes, and considers the person's state of mind at different times.  Insanity within the meaning of Cal. Penal Code § 25(b) turns on whether, at the time of his criminal offense, the defendant understood or knew the nature of quality of his act and understood the difference between right and wrong.  Cal. Penal Code § 25(b).  Insanity within the meaning of Cal. Penal Code §§ 1026(b), 1026.2(e) turns on whether, at the time of the commitment hearing, the person is a danger to the health and safety of others.  Cal. Penal Code §§ 1026(b), 1026.2(e).  Lack of legal capacity within the meaning of Cal. Civ. Proc. § 352(a) turns on whether, at the time the cause of action accrued, the person was sufficiently aware of the nature or effects of his actions to be able to comprehend the instigation of a legal action.  Cal. Civ. Proc. § 352(a).

For the purposes of Cal. Civ. Proc. § 352(a), a person's commitment to a psychiatric institution, such as Napa State Hospital, raises a rebuttable presumption of lack of legal capacity to make decisions.  *Hsu*, 259 Cal. App. 2d at 571.  Defendants have rebutted the presumption of lack of legal capacity arising from Plaintiff's commitment to Napa State Hospital.  Specifically, Defendants have rebutted the presumption of lack of legal capacity at the time of the event by providing evidence that, on the day of the alleged assault, jail officials described Plaintiff as presenting as clear and coherent, and reported that Plaintiff's medications were "reportedly" effective in controlling his schizoaffective diagnosis, that Plaintiff self-reported that the voices were not telling him to hurt anyone, and that Plaintiff was able to recall the jail official's name from several years ago.  Dkt. No. 1 at 9.  In addition, Plaintiff's litigation activity in the months

United States District Court
Northern District of California

prior to this incident support the finding that Plaintiff did not lack legal capacity on December 12, 2012, when the limitations period accrued.

The evidence proffered by Plaintiff does not raise a triable issue of fact as to whether, at the time the action accrued, he lacked the legal capacity to transact business, such as conduct litigation, or to understand the nature or effects of his acts.

Deputy Public Defender Sonia Smith's June 7, 2007 letter requests that Dr. Echeandia evaluate whether, at that time, Plaintiff was mentally competent to stand trial within the meaning of Cal. Penal Code § 1368; and whether Plaintiff had a mental disease or defect and if so, whether the mental disease or defect existed at the time of the offense, whether that mental disease or defect amounted to legal insanity, and whether that mental disease or defect affected Plaintiff's ability to form the requisite intent under Cal. Penal Code §§ 245(a)(1), 594(a)/(b)(2)(A).  Dkt. No. 64-1 at 29-30.  Ms. Smith's concerns about Plaintiff's mental state in June 2007 or at the time of the offenses do not raise a triable issue of fact as to whether Plaintiff lacked legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a) when the action accrued, i.e., was unable to transact business or understand the nature or effects of his acts on December 12, 2012.

Dr. Greene's August 17, 2007 letter provided the professional medical opinion that, based on his August 15, 2007 examination of Plaintiff and his review of the March 22, 2007 San Jose Police Department records, Plaintiff was, at that time, incompetent to stand trial within the meaning of Cal. Penal Code sections 1368 and 1370 because his psychotic disorder prevented him from assisting counsel in the conduct of his defense in a rational manner.  Dkt. No. 64-1 at 38-43. Dr. Greene's conclusions about Plaintiff's mental state and mental capacity in 2007 also do not raise any triable issue of fact as to whether Plaintiff lacked legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a) when the action accrued.

Dr. Kline's December 15, 2012 letter provided the professional medical opinion that, based on in-person evaluations of Plaintiff on August 27 and October 16, 2012, Plaintiff met the definition of legal insanity, as defined by Cal. Penal Code § 25(b), during the September 4, 2007 incident of violence against correctional officers because he did not understand the quality or wrongfulness of his actions owing to the impairing impact of acute paranoid psychotic symptoms.

Dkt. No. 64-1 at 2.  Dr. Kline made no conclusions or assessments about Plaintiff's mental state on the dates that he met with Plaintiff or as of the date of the letter, or about whether Plaintiff was able to transact business, such as litigation, or to understand the nature or effects of his acts.  Dr. Kline's professional medical opinion as to whether Plaintiff's mental state on September 4, 2007 met the definition of legal insanity pursuant to Cal. Penal Code § 25(b) does not raise a triable issue of fact as to whether Plaintiff lacked legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a) when the action accrued.

The August 19, 2013 letter from Harper Medical Group, Inc. community program director Douglas Johnson recommending Plaintiff's commitment to the Department of State Hospitals and the related September 24, 2013 proceeding committing Plaintiff to the Department of State Hospitals show that, as of September 2013, Plaintiff was not considered restored to sanity.  Dkt. No. 64-1 at 45, 60-66.  However, as explained above, whether a defendant has been restored to sanity for purposes of release from the custody of the Department of State Hospitals turns on whether the defendant poses a danger to the health and safety of others, Cal. Penal Code §§ 1026(b), 1026.2(e), which is distinct from whether a person lacks legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a), i.e., is able to transact business or understand the nature or effects of his acts.  Moreover, these evaluations and determinations took place after December 12, 2012, and contain no opinion as to Plaintiff's legal capacity on that date.

Similarly, the June 12, 2018 denial of Plaintiff's petition for restoration of sanity, Dkt No. 64-3 at 2-72, only establishes that, as of that date, Plaintiff posed a danger to the health and safety of others due to his mental defect, disease, or disorder.  Cal. Penal Code §§ 1026(b), 1026.2(e).  In denying the petition for restoration of sanity, the court made no determination as to whether Plaintiff lacked legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a), i.e., was unable to transact business or understand the nature or effects of his acts.  Moreover, this determination of whether Plaintiff posed a danger to the health and safety of others took place five and a half years after December 12, 2012, and contains no opinion regarding Plaintiff's legal capacity on that date.

The 2018, 2019, and 2022 California Department of State Hospitals treatment plans and

United States District Court
Northern District of California

the April 17, 2022 Wellness Recovery Action Plan ("WRAP"), ECF No. 64-1 at 71-90 and ECF No. 64-3 at 74-96, also do not create any triable issue of fact as to whether Plaintiff lacked legal capacity within the meaning of Cal. Civ. Proc. Code § 352(a) on December 12, 2012.  Although these treatment plans and the action plan show that Plaintiff was diagnosed with schizoaffective disorder, biopolar type, and antisocial personality disorder; that Plaintiff continued to have difficulty distinguishing between triggers, early warning signs, and symptoms; and that Plaintiff had not met all his treatment goals, these treatment plans and the action plan do not address whether Plaintiff was unable to transact business or understand the nature or effects of his acts. Rather, these treatment plans and the action plan appear to presume that Plaintiff is capable of deciding on, and achieving, treatment goals, including understanding and managing his mental illness.

Neither *May* nor *Gottesman* is applicable here.  *May* applied Cal. Code Civ. Proc. § 352-3, as effective in 1971, in determining whether the plaintiff's action was time-barred.  Cal. Code Civ. Proc. § 352-3 tolled the limitations period for the disability of imprisonment on a criminal charge or in execution of a criminal sentence.  *See generally May*, 633 F.2d at 166-67.  *May* is inapplicable here because Plaintiff is not imprisoned on a criminal charge or pursuant to the execution of a criminal sentence.  *Gottesman* holds that an adjudication of insanity in guardianship proceedings, Cal. Probate Code §§ 1460-72, conclusively establishes insanity within the meaning of Cal. Code Civ. Proc. § 352(a).  *Gottesman*, 169 Cal.App.2d at 499-502. *Gottesman* is inapplicable here because Plaintiff is not subject to guardianship due to being adjudicated insane.

Accordingly, the Court finds that Defendants have rebutted the presumption of incapacity within the meaning of Cal. Civ. Proc. § 352(a), and have demonstrated that Plaintiff did not lack legal capacity at the time of the event, December 12, 2012.  This action is untimely unless Plaintiff is entitled to equitable tolling.

### 2.    Equitable Tolling

Viewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not established a triable issue of material fact as to whether he is entitled to equitable tolling of the limitations period.

1    Plaintiff has not shown that extraordinary circumstances beyond his control made it

2    impossible to timely file this excessive force claim.  In his opposition, Plaintiff appears to argue

3    that the following constitute extraordinary circumstances:  the determination that he was insane at

4    the time of his 2007 criminal offenses within the meaning of Cal. Penal Code § 25(a); the 2018

5    determination that he was not yet restored to sanity within the meaning of Cal. Penal Code

6    § 1026.2(e); his schizoaffective, bipolar, and antisocial personality diagnoses; and the 2018, 2019,

7    and 2022 treatment plans indicating that he continues to require in-patient treatment at Napa State

8    Hospital.  But the record shows that these legal determinations, psychiatric diagnoses, and need

9    for further treatment did not prevent him from actively and extensively pursuing other litigation

10   during the relevant time period.  The Court's independent review of Plaintiff's litigation activity

11   from December 2012 to January 2019 indicates that Plaintiff filed approximately 150 *pro se*

12   filings in seven different cases over the six-year period, averaging 20 filings a year.  These filings

13   are evidence that Plaintiff possessed legal capacity during this time period, as the filings show

14   Plaintiff's ability "to comprehend . . . the instigation of a legal action."[8]  *See Hsu*, 66 Cal. Rptr. at

15   666.  This conclusion is underscored by the fact that California law requires "a person who lacks

16   legal capacity to make decisions" to appear in court by guardian, conservator, or guardian ad

17   litem.  *See* Cal. Civ. Proc. Code § 372(a)(1).[9]  Only a person who has capacity may proceed in his

18

19   [8] In its December 9, 2021 order, the Ninth Circuit suggested that it was "possible that Ortega was
20   only competent during brief windows of time—windows that add up to much less than two years."
     Dkt. No. 45 at 4.  Now that the record is developed, nothing indicates that Plaintiff lacked legal
21   capacity within the meaning of Cal. Civ. Proc. Code § 352(a) at any time from December 12, 2012
     to January 18, 2019, or that he cycled between having legal capacity and lacking legal capacity
22   during this time period.  But even to the extent that Plaintiff can be presumed to lack legal
     capacity during the months which he did not file any pleadings, this action remains untimely.
23   During the relevant six-year period, Plaintiff filed *pro se* pleadings every month except for the
     following months: August 2013; May, June and October 2014; April, May, July–September, and
24   December 2015; May-July and October–December 2016; January, April, May, July, November,
     and December 2017; and February, March, November, and December 2018.  *See* C No. 09-cv-
25   5527 SBA, *Ortega v. City of Santa Clara*; C No. 11-cv-01003 SBA, *Ortega v. Smith, et al.*; C No.
     12-cv-3426 KAW, *Ortega v. Flavetta, et al.*; C No. 13-cv-06016 JSC, *Ortega v. Mattocks, et al.*;
26   C No. 14-cv-03783 HSG, *Ortega v. Barbasa, et al.*; C No. 15-cv-04876 HSG, *Ortega v. Ritchie*;
     and C No. 17-cv-03339, *Ortega v. Corso*.  There were twenty-six months in this six-year period
27   during which Plaintiff did not file any *pro se* pleadings.  However, Plaintiff's action is untimely by
     near four years.  Even if the Court were to presume that Plaintiff lacked legal capacity in the
28   twenty-six months when he did not file any *pro se* pleadings, this action would remain untimely
     by nearly two years.
     [9] Before 2015, Cal. Civ. Proc. Code § 372(a)(1) used the term "incompetent person," but the same

21

own name.

In his discovery responses, when Plaintiff was asked to "state all the reasons that [he] waited until January of 2019 to file [his] lawsuit in this case," Plaintiff responded as follows: "Plaintiff was litigating another excessive force lawsuit Case No. 14-cv-03783 to March 1, 2017. Plaintiff then filed this excessive force due process under Case No. 17-cv-03339 (HSG).  On 10-12-2018 Court ordered dismissal to refile [single] claim separately as this Case No. 19-cv-0319 (HSG)."[10]  Dkt. No. 60-1 at 69-70.  Plaintiff appears to contend that he was unable to file this case because he prioritized pursuing C No. 14-cv-03783 (HSG), *Ortega v. Barbasa, et al.* ("*Barbasa*"), which he filed on or about August 8, 2014 and did not conclude until April 6, 2017,[11] and that he promptly pursued the claims in this case by filing Case No. 17-cv-03339 (HSG), *Ortega v. Corso, et al.*, on or about June 9, 2017, soon after the conclusion of *Barbasa*.[12]  Plaintiff's decision to

_____

"non-substantive" statute that amended Cal. Civ. Proc. Code § 352(a) altered this term to "a person who lacks legal capacity to make decisions." *See* Cal. Civ. Proc. Code § 372, *amended by* 2014 Cal. Stat. c. 144, § 5; Concurrence in Senate Amendments: A.B. 1847.

[10] Plaintiff misrepresents the reason that *Corso* was dismissed.  In *Corso*, this Court dismissed the initial complaint and the first amended complaint with leave to amend for failure to state a claim. *Corso*, Dkt. Nos. 7, 10.  The Court then dismissed the second amended complaint with leave to amend because although it stated a cognizable due process claim in connection with inmate rules violation procedures arising out of two disciplinary infractions, it failed to link one or more specific defendants to the due process claim.  *Corso*, Dkt. No. 13.  The Court dismissed the third amended complaint because it again failed to identify a defendant responsible for the alleged due process violation.  In dismissing the third amended complaint, the Court dismissed the action in its entirety because Plaintiff had been granted multiple opportunities to amend and was either unwilling or unable to correct the deficiencies identified by the Court.  The dismissal was without prejudice to filing a new action if Plaintiff could successfully identify the specific defendant(s) responsible for the alleged due process violation.  *Corso*, Dkt. No. 21.  In *Corso*, the Court did not identify or reference the excessive force claim raised in this action, and the Court did not instruct Plaintiff to separately re-file another case to raise the excessive force claim.

[11] On April 6, 2017, *Barbasa* was dismissed with prejudice pursuant to the parties' joint stipulation of dismissal.  *Barbasa*, Dkt. Nos. 85, 86.

[12] Plaintiff claims that he first raised these claims in Case No. 17-cv-03339 (HSG), *Ortega v Corso, et al.* ("*Corso*").  The Court has reviewed the docket in *Corso*.  While the complaints in *Corso* listed the defendants in this action and referenced the December 12, 2012 incident at issue in this case, the *Corso* complaints named numerous additional defendants, focused on due process claims, and alleged a variety of due process and excessive force claims arising from unrelated incidents spanning a five-year period.  *Corso* was ultimately dismissed without prejudice because the complaints failed to state a cognizable claim for relief against any defendant.  *Corso*, Dkt. No. 21.  The complaints in *Corso* were never served on any individual.  *Corso* therefore did not provide Defendants with notice that Plaintiff would bring an excessive force claim regarding the December 12, 2012 incident.

Assuming arguendo that these claims were raised in in *Corso*, the claims remains untimely because *Corso* was filed on June 9, 2017, two-and-a-half-years after the limitations period ended. Nor would the claims be timely if the Court presumes that Plaintiff lacked legal capacity in the

United States District Court
Northern District of California

1  prioritize other litigation does not entitle him to equitable tolling.[13]  The purpose of equitable

2  tolling is to "prevent the unjust and technical forfeitures of the right to a trial on the merits when

3  the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—

4  has been satisfied."  *McDonald*, 45 Cal.4th at 99 (internal quotation marks and citation omitted).

5  Here, according to Plaintiff's discovery responses, his forfeiture of the claims in this action was

6  due to litigation strategy choices and not because of the application of an unjust legal technicality.

7  And there is no indication that Plaintiff provided timely notice to Defendants that he would legally

8  pursue the claims raised in this action.  In addition, Plaintiff's decision to delay pursuing the

9  claims in this case so that he could prioritize other litigation contradicts his claims that the legal

10  determinations of insanity and his mental health diagnoses rendered him unable to file these

11  claims prior to January 18, 2019.

12         Plaintiff has not established the elements required for application of equitable tolling under

13  California law.  Plaintiff has not addressed how any alleged "extraordinary circumstances"

14  prevented him from timely filing this action, yet did not prevent him from filing approximately

15  150 *pro se* filings in seven other actions during the same time period.  The excessive force claim

16  in this action is straightforward, based on a single event.  The complaint did not require extensive

17  discovery to prepare.  Given his active litigation of seven other actions, his six-year delay in

18  giving Defendants notice of this claim is not excusable, reasonable, or in good faith.  Finally, a

19  six-year delay prejudices Defendants because witnesses' memories have faded.

20         The Court finds that Plaintiff is not entitled to equitable tolling of the statute of limitations.

21  *McDonald*, 45 Cal.4th at 102 (for equitable tolling, plaintiff must establish timely notice, lack of

22  prejudice to defendant, and reasonable and good faith conduct on part of plaintiff).  This action

23  remains untimely.

24  _____

25  months when he did not file any *pro se* pleadings.  From the end of the limitations period
   (December 12, 2014) to when *Corso* was filed (June 9, 2017), there were seventeen months during

26  which Plaintiff did not file any *pro se* pleadings.  This action would still be untimely by at least
   thirteen months.

27  [13] The record indicates that Plaintiff was capable of pursuing other cases while litigating *Barbasa*.
   While litigating *Barbasa* from August 8, 2014 to April 6, 2017, Plaintiff filed C No. 15-cv-04876

28  HSG, *Ortega v. Ritchie* ("*Ritchie*") and actively litigated *Ritchie* until it was closed on February
   27, 2017, pursuant to the court's grant of summary judgment in favor of the defendants in *Ritchie*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the reasons set forth above, the Court orders as follows.

1.      The Court GRANTS Defendants' request for judicial notice, Dkt. No. 60-2, and DENIES Plaintiff's request for judicial notice, Dkt. No. 65.

2.      The Court DENIES Plaintiff's request for leave to file a surreply.  Dkt. No. 68.

3.      The Court GRANTS Defendants' motion for summary judgment.  Dkt. No. 60. The Clerk shall enter judgment in favor of Defendants and against Plaintiff.

This order terminates Dkt. Nos. 60, 68.

**IT IS SO ORDERED.**

Dated:    7/26/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

24